# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY I. SIEGEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| BLUE GIANT EQUIPMENT CORPORATION, | ) ) Case No. 15-CV-143-TCK-JFJ |
| Defendant, | ) ) ) |
| COMPSOURCE MUTUAL INSURANCE COMPANY (fka Compsource Oklahoma), | ) ) ) |
| Intervenor. | ) |

## OPINION AND ORDER

Before the court is defendant Blue Giant Equipment Corporation's ("Blue Giant") *Daubert* Motion to Strike Plaintiff's Engineering Expert Robert J. Block, Ph.D. (Doc. 93). Plaintiff Timothy I. Siegel opposes the motion. (Doc. 104).

**I. Background**

In this product liability action, Mr. Siegel seeks damages for injuries he sustained when he pulled a heavily-laden dolly off an elevated Blue Giant dock lift and onto himself. He intends to call Robert J. Block, Ph.D. as an expert witness in the field of mechanical engineering. Dr. Block has opined that the lift was defective and unreasonably dangerous because it allegedly "did not incorporate in its design and manufacture adequate protection against roll-off of loaded wheeled conveyances," and "was not accompanied by adequate and durable warning signs." (Doc. 93, Ex. 1, Rule 25 Report of Robert J. Block, Ph.D. at p. 12, ¶35 and p. 13, ¶40).

Blue Giant contends that Dr. Block should not be permitted to testify because he is not sufficiently qualified to render his proposed opinion testimony and his opinions are not grounded in the facts of the case, nor do they result from a cogent methodology, and therefore, they are unreliable.

**II. Applicable Law**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 149 (1999). A trial court's gatekeeper duty requires two separate inquiries: (1) the witness must be qualified to offer the opinions he is espousing and (2) the proponent of the witness bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable. *Kumho Tire,* 526 U.S. at 141, 152. When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*); Fed. R. Evid. 104(a).

Dr. Block proposes to testify regarding (1) the mechanical engineering, design, application, and use of the dock lift, which is a type of "material handling equipment," and (2) the adequacy of instructions and warnings for the dock lift.

Blue Giant challenges both Dr. Block's qualifications and the relevance and reliability of his opinions.

**III. Analysis**

**A. Qualifications**

In order to qualify as an expert, a proposed witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). An expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury." *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998). Proposed expert testimony must therefore "fall within the reasonable confines of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (internal quotation marks omitted).

"District courts have broad discretion in determining the competency of expert witnesses." *United States v. Nichols*, 169 .3d 1255, 1265 (10th Cir. 1999). The court must determine whether the expert's qualifications are both "(i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Role 702) and (ii) specific to the matters he proposed to address as an expert." *In re Williams Securities Litigation*, 496 F. Supp. 2d 1195, 1232 (N.D. Okla. 2007).

Dr. Block, who has a Ph.D. in Metallurgical Engineering with minors in Physics and Chemistry, taught at the University of Oklahoma from 1963 until 1990, and is now a Professor Emeritus. (Doc. 93-2, Curriculum Vitae at 1-2). Since 1990, he has been C.E.O. of Associated Metallurgists, an engineering consulting company. *Id.* As an engineering consultant,

approximately three-quarters of Dr. Block's work has been as an expert witness in various lawsuits. (Doc. 93-3, Block Dep. at 30:23-31:5).

Dr. Block's opinion is based on his review of documents related to operation of the Blue Giant elevating dock, the circumstances of the accident, "established principles of safe engineering design embodied in standards, codes, the generally accepted hierarchy for safe product design and custom and practice for accident prevention," and his examination and testing of the elevating dock. (Doc. 104-1 at 5-6).

Dr. Block has never been a working mechanical engineer. He has never designed a machine that was produced and put into production. (*Id.*, Block Dep. at 31:14-32:1). He has never designed a dock lift. (*Id.* at 32:2-4). He has (1) never worked in the materials handling industry, is not a member of the Material Handling Industry of America; (2) never attended a meeting of the materials handling industry; (3) does not subscribe to or regularly review any peer reviewed publication regarding materials handling, and (4) has never authored a paper on the subject. (*Id.* at 33:24-34:25). In undergraduate school, he studied how scissor lifts work, but aside from his involvement as an expert in litigation or anticipated litigation, he has no experience with the type of equipment at issue in this case. (*Id.* at 36:4-20). Dr. Block has never read any book on material handling machinery. (*Id.* at 45:13-17). He admitted he has no knowledge of the standard practices of the material handling industry. (*Id.* at 118:24-119:1). He has no expertise in the design, manufacture or use of the lift at issue in this case, and no familiarity with dock lifts aside from what he has learned participating in this case. (*Id.* at 35:20-36:1). He has never encountered a dock lift equipped with a hinged bridge before this case. (*Id.* at 45:9-12).

Although Dr. Block has significant experience and expertise in the field of engineering, the Court concludes that he lacks the relevant expertise to opine about the dock lift at issue in this case.[1]

**B. Reliability**

In *Daubert*, the Supreme Court identified four nonexclusive factors the trial court may consider to assist in the assessment of reliability: (1) whether the opinion at issue "can be (and has been) tested;" (2) whether the theory or technique has been subjected peer review and publication; (3) in the case of a particular scientific technique, the known or potential rate of error; and (4) the degree of acceptance of the opinion within the relevant scientific community. 509 U.S. at 593-94. *See also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004).

This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Dodge v. Cotter Corporation,* 328 F.3d 1212, 1222 (10th Cir. 2003) (citing *Kumho Tire*, 526 U.S. at 150). "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire, Id.* at 141-42 (emphasis in original).

---

[1] In at least two other cases, federal courts have determined that Dr. Block's education and experience as a metallurgical engineer did not qualify him as an expert witness in other fields of engineering: *Taber v. Allied Waste Systems, Inc.*, 2015 WL 1119750 at *6 (W.D. Okla. March 11, 2015) (unpublished) (finding that Dr. Block's engineering experience in the field of metallurgy did not qualify him to testify as an expert in a product liability case involving the design and construction of a ladder); and *Kelley v. Rival Mfg. Co.*, 704 F. Supp. 1039, 1045 (W.D. Okla. 1989) (finding that Dr. Block was not competent to testify about alleged design defects in a crockpot).

An expert's testimony may be excluded where it is based on subjective beliefs or unsupported speculation which is no more than *ipse dixit* guesswork. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered").

It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. *Dodge,* 328 F.3d at 1222. "Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1222-23.

The second prong of the *Daubert* inquiry concerns relevancy or "fit." The trial court must conduct inquiry into whether proposed testimony is sufficiently "relevant to the task at hand." *Bitler*, 400 F.3d at 1234 (citing *Daubert,* 509 U.S. at 597). A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact. *Id*. at 1234. "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.*

In his report, Dr. Block opined, *inter alia*, that the Blue Giant dock was "defective and unreasonably dangerous beyond the expectation of ordinary purchasers and users because it did not incorporate in its design and manufacture adequate protection against roll-off of loaded wheeled conveyances." (Doc. 93-1, at 13, ¶35). Additionally, he opined that the dock "was not accompanied by adequate and durable warning signs, prominently displayed in the vicinity of the

dock, sufficient to inform workers of the dangers associated with roll-off of wheeled equipment from the elevated dock platform, and the consequences of those dangers and the means to avoid those consequences." (*Id.* at 14, ¶40).[2]

Dr. Block cited the American National Standards Institute ("ANSI")[3] A1264.1 in support of his opinion that the Blue Giant lift was defective because it was inadequately guarded. (Doc. 93-1 at p. 12, ¶35). The standard states that "every open sided platform *4 feet or more above adjacent floor or ground level* shall be guarded by a railing system or equivalent." (Doc. 93-6, ANSI Standard A124.1 at 18, ¶5.1) (emphasis added). Dr. Block contends this standard required Blue Giant to install a fixed "railing system" on the dock lift. (Doc. 93-4, Supplemental Report of Findings, at 12, ¶12). However, the platform on the dock lift at issue was not "4 feet or more above adjacent floor or ground level," but only 3 feet 10 inches above ground level. (Doc. 93-7, Photograph of Lift with Measurement).[4]

Blue Giant asserts—and the Court agrees—that the applicable standard is ANSI MH29.1—Safety Requirements for Industrial Scissor Lifts, a publication of the Lift Manufacturers Product Section of the Material Handling Industry of America. (Doc. 90-6 at ii). Blue Giant custom built the lift for its customer according to a Specification which mandated that the lift comply with ANSI MH 29.1, which requires a guardrail system of handrails and safety chains.

---

[2] Additionally, in his response to Blue Giant's *Daubert* motion, Plaintiff asserted for the first time that Dr. Block believes the dock lifts instructions and warnings were themselves inadequate. (Doc. 104 at 6-7).

[3] ANSI is a private non-profit organization that oversees the development of voluntary consensus standards for products, services, processes, systems and personnel in the United States. (Doc. 90-6 at 2).

[4] While the lift had a maximum vertical travel of 4 feet 11 inches, it was designed to be and was situated in a pit, thereby lowering its maximum height above ground level to below 4 feet. (Doc. 93-8, Blue Giant Technical Data)

*See* Doc. 90-5 at ¶1.4(B). Dr. Block does not dispute that ANSI MH29.1 is applicable to the lift at issue in this case, or that the Blue Giant lift complied with that standard. (Doc. 93-3, Block Dep. at 59:2-24, 103:4-8). Nonetheless, he stated in his deposition that "this particular piece of equipment is a work platform when it's in the elevated position which is where Tim Siegel fell," that therefore ANSI 1264.17 also applies, and that, absent the lip, the chain across the open end of the platform—had it been used—"probably would have broken" when the loaded cart hit it. (*Id.* at 99:17-100:14; 103:1-104:14). In defending his opinion, Dr. Block stated, "That's all I need, the standard itself. That's what informs Bob Block that this particular piece of equipment is a work platform when it's in the elevated position which is where Tim Siegal fell." (*Id.* at 104:10-15). This opinion is clearly impermissible *ipse dixit*.

Dr. Block has also opined that the dock lift was defective and unreasonably dangerous because the "lip" on the edge of the platform required affirmative action on the part of workers to move it into a vertical position and provide "roll-off protection." (Doc. 93-1 at 11, ¶32(b); 12, ¶33). However, the "lip," which was mandated by the customer's Specification, was intended to serve as a "hinged bridge," which is defined by ANSI MH29.1 as a "hinged transition plate which is attached to the edge of the platform and used to bridge the gap between the platform and landing and/or truck bed." (Doc. 90-6 at 3, ¶3.8). Contrary to Dr. Block's assumption, it was not designed or intended to protect against roll-off of wheeled conveyances.

Blue Giant also challenges Dr. Block's opinion that the scissor lift was defective because it allegedly "was not accompanied by adequate and durable warning signs." (Ex. 93-1 at 14, ¶40). During his deposition, and in response to a question about whether or not Blue Giant provided warning signs with the scissor lift, Dr. Block testified, "I didn't see any warning signs. My

8

understanding was there were no warning signs and I didn't see any warning signs when I did the examination." (Doc. 93-3, Ex. 3, 108:25-109:16).

However, it is uncontroverted that Blue Giant provided Overhead Door Company of Tulsa, the purchaser of the lift, with an Owner's Manual containing instructions and warnings, as well as a laminated placard containing warnings, both of which instruct and warn users to ensure the factory-equipped guardrails and restraint chains across the open ends of the lift are securely in place prior to using the product. (Doc. 90-13, Owner's Manual; Doct. 90-14, Placard; Dkt. 90-15, Luciano Pelosi Dep. at 107:12-9). The Blue Giant Owner's Manual and placard instruct users to ensure the factory-equipped guardrails and restraint chains across the open ends of the lift are securely in place prior to using the product. (Doc. 9-13, p. 10 ¶4, p. 12, ¶3, p. 13, ¶6; Dkt. 90-14 at ¶4. The Owner's Manual states that "if unit is equipped with a hinged bridge it must be stored in upright position and secured by safety chain," (Doc. 90-13, p. 13, ¶6(d); users should never utilize or apply weight to the hinged bridge unless it is overlapping a solid surface and should never use the bridge if it is supported only by its lifting chain. (Doc. 90-13 at p. 10, ¶10, p. 13. The Manual also instructs users to "Center [the] load on lift platform." *Id.* at p. 13, ¶6(b).[5]

Finally, Mr. Siegal testified that nobody ever gave him any oral or written instructions for operating the Blue Giant scissor lift, nor was he given any warnings about using the chains on the open ends of the lift or centering the load. (Doc. 119-3 at 55:18-58:23). This renders moot the issue of the sufficiency of the instructions.

---

[5] Dr. Block acknowledged that if Mr. Siegel "had stopped at the center of the unit, we wouldn't be here." Doc. 93-3, Ex. 3 at p. 110:14-15).

### C. Legal Conclusions

Blue Giant also contends that Dr. Block's opinion that "[t]he subject Blue Giant Elevating Dock was defective and unreasonably dangerous beyond the expectation of ordinary purchasers and users because it did not incorporate in its design and manufacture adequate protection against rolloff of loaded wheeled conveyances" (Doc. 93-1 at 13, Report of Findings, ¶35), is "nothing more than a bare legal conclusion based merely upon pure *ipse dixit.*" (Doc. 93 at 13). In response, Plaintiff argues that Dr. Block "explained <u>why</u> he felt that it was unreasonably fit" and "unreasonably dangerous." (Doc. 104 at 7). However, Dr. Block, in his "explanations," repeatedly misstated the undisputed facts. For example, he "explained" that the dock lift was defective because "there were not safety devices to protect against rolloff,," even though it is undisputed that the lift was equipped with the safety devices the Dock Lift Section of the Material Handling Industry deems to be appropriate, including removable handrails and chains at both ends between the rails. *See* Dkt. 90 at 10, ¶¶ 9-10, 16-17.

Furthermore, Dr. Block's argument that the dock lift is defective and unreasonably dangerous because it allegedly violates ANSI 1264.17 (see p. 7, *supra*), is clearly a legal conclusion and moreover, contradicts controlling Oklahoma law. *See Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1089 (10th Cir. 2001) (holding that under Oklahoma law, a violation of engineering standards does *not* establish a product was defective or unreasonably dangerous).

### IV. Conclusion

For the reasons set forth above, Blue Giant's *Daubert* Motion to Strike Plaintiff's Engineering Expert Robert J. Block, Ph.D., (Doc. 93) is granted.

ENTERED this 31th day of October, 2018.

**TERENCE KERN**
**United States District Judge**